[L. A. No. 14356. In Bank.—May 9, 1934.]

LELAND S. HAMER et al., Respondents, v. J. WARREN MacCLATCHIE et al., Appellants.

Henry S. Richmond, Irvin L. Fuller, Euler & Subith and Fred E. Subith for Appellants.

Evans, Pearce & Campbell and Wilbur Bassett for Respondents.

PRESTON, J.—This cause, submitted upon motion of plaintiffs to dismiss defendants' appeal or to affirm the judgment, may be disposed of by a brief discussion leading to adoption of the latter course. The word "plaintiff" will refer to plaintiff Hamer, the coplaintiff being his assignee of a part interest in the cause. The word "defendant" will refer to the defendant J. Warren MacClatchie.

About July 9, 1923, plaintiff, an inventor of oil-well tools and machinery, filed a patent application No. 650,289, for a mechanical device known as a tong puller to break joints in well-drilling drill pipe, the full assembly thereof comprising a cam and cathead, together with a bar, bearing slide and a pulling line. He exhibited his plans to defendant and conferred with him relative to possible manufacture and marketing of the device. These negotiations bore no fruit. Later, about November 18, 1925, defendant filed an application for letters patent, No. 69,731, on a similar apparatus. In January, 1926, plaintiff told defendant that claims had been allowed on his patent application of such breadth and scope that defendant's device would infringe them and he permitted defendant to inspect his patent file. After examining the patent papers, defendant concurred in plaintiff's

view. Soon thereafter, and on January 16, 1926, these parties executed the written contract which forms the basis of this action.

Said contract recited that plaintiff had made application for a patent as aforesaid and that defendant was engaged in the manufacture of various mechanical devices and oil-well appliances and was desirous of securing the sole right to manufacture and sell plaintiff's device under the patent throughout the United States; that, therefore, plaintiff granted to defendant the sole right to manufacture and sell said invention covered by said patent application during the term of patent and defendant agreed, in consideration of said right, to use every reasonable endeavor to introduce the device into general use and promote its manufacture and sale and to pay plaintiff, for each device or part thereof sold, a royalty of ten per cent of the gross selling price. The contract then provided: "Whereas, the party of the second part (plaintiff) agrees to cooperate with and render whatever assistance is necessary respecting the mode and use of said device, and that they further agree to turn over any and all improvements of said inventions, invented or devised by any either or all of them collectively or individually, such improvements to be for the benefit of all the parties herein mentioned, and it is also agreed between the parties hereto that there will be no additional royalties paid for any improvements or additions to said Hamer Tong Pulling device, such royalty to remain as herein before mentioned. . . . ''

Letters patent were subsequently issued on the respective applications, to defendant on June 28, 1927, and to plaintiff on August 22, 1932. At the time plaintiff's application finally ripened into a patent, it appeared that a number of the claims theretofore allowed him had been withdrawn, leaving grave doubt as to whether the claims finally embodied in the patent were broad enough to cover defendant's invention. Defendant, however, continued to pay royalties to plaintiff under the contract until July 9, 1928, after which date he refused to make further payments.

Plaintiff thereafter brought this action for an accounting and recovery of unpaid royalties, praying also that said contract be decreed in full force and effect, with defendant's patent held in trust for both parties. Defendant answered

setting up claims of mutual rescission, failure of consideration and breach of warranty. The cause was tried before the court sitting without a jury. Voluminous evidence was received and the court made findings and gave judgment for plaintiff substantially as prayed, including an award of $11,987.45 on the accounting. Defendant appealed. He has filed an opening brief and a longer supplemental brief, urging numerous grounds for reversal of the judgment. We will pause to discuss only those contentions deemed most important.

Appellant's first contention is that the contract was terminated and canceled upon his receipt of a letter, dated October 4, 1928, from Mr. William H. Maxwell, demanding, on behalf of plaintiff, that appellant continue the royalty payments and concluding with the statement: "Unless the royalties . . . are forthcoming immediately, the Agreement will, of course, terminate in which event suitable action will be taken to recover all amounts due." Appellant testified that after receiving this letter he had a telephone conversation with plaintiff, at which time he advised plaintiff that he considered the contract ended and would confirm the cancellation by letter, which letter he wrote on May 13, 1929.

The Maxwell letter is not in evidence. It was marked for identification only and objection to its admission was sustained. We find no prejudicial error on the part of the court below in making this ruling. The evidence showed that the writer was not an attorney, but a patent solicitor for plaintiff and that he had no authority whatsoever to make the statement above quoted. Moreover, it can scarcely be construed as a notice of cancellation or rescission, being clearly intended in the nature of a threat to induce further payment of royalties. It will be noted that appellant's so-called confirmatory letter was not written until more than seven months had elapsed from the date of the Maxwell letter. Plaintiff denied cancellation or rescission of the contract by telephone conversation, letter or in any other manner and the trial court found for him on this issue. Such finding is supported by persuasive evidence. And we may here add that there is in the record abundant support also for all of the other findings of the trial court.

■ Secondly, appellant contends that there was a failure of consideration because he was induced to enter into the contract solely upon the representations of plaintiff that if his device infringed plaintiff's claims and patent, said claims would be made the basis of an infringement suit; but that the claims were not supported by the letters patent subsequently issued and hence there was a failure of consideration. And it is further urged that the court erred in refusing to admit testimony, covered by appellant's offer of proof, showing a marked distinction between plaintiff's invention and the device being manufactured by appellant. Appellant testified that he was not manufacturing the device which he saw in 1923, or any device sufficiently similar thereto to charge him with payment of royalties to plaintiff. Plaintiff's evidence was in direct contradiction of this statement.

The above contentions are untenable. We agree with the court below that the language of the contract is clear and not ambiguous. It sets forth the mutual agreement of these parties to co-operate and work together in an endeavor to perfect the device and improvements thereto and to manufacture, market and introduce it into general use. In other words, it is clear that the parties were contracting to ''pool'' their inventive ideas with respect to the device and it therefore became immaterial, after execution of the contract, whether the desired claims were allowed under the one patent or the other, or in which name the patent stood, or how far the finished product varied from the original invention. What other import could the language above quoted have: ''That they further agree to turn over any and all improvements of said inventions, invented or devised by any either or all of them collectively or individually, such improvements to be for the benefit of all the parties . . . ''? There is no special meaning of the word ''improvements'' in the patent law which would compel a construction of said provision as uncertain or ambiguous. Furthermore, the evidence shows that the plans and ideas of these parties were freely exchanged for their mutual benefit. It fully justifies the finding that, under the terms of the agreement, the patent issued to defendant was held in trust by him for the benefit of both parties.

Prior to execution of the contract appellant had full opportunity to make a thorough study of plaintiff's application and allowed claims. This examination led him to believe that his device might infringe the patent granted to plaintiff. He could have pushed his own invention on the chance that plaintiff's claims would be withdrawn, but he chose the safe course of contracting for a license under the claims then allowed plaintiff and any patent subsequently issued thereon. Appellant received the protection for which he contracted. The final action of the patent office on plaintiff's application therefore had no bearing on the issue of consideration. It might well have been that plaintiff ceased to act in the interest of any or all of his own claims in order to leave appellant free in furthering his application, in view of the contract which united the inventions and ideas of either one of them for the benefit of both.

The above remarks dispose of appellant's further specification that the failure of plaintiff to secure a patent allowing him his said broad claims constituted a breach of warranty. The contract contained no such warranty and the court properly found there was none. Appellant's further contentions relating to alleged errors on the part of the court in the rejection of evidence, in interpretation and construction of said contract, etc., have also been sufficiently disposed of by the above discussion.

The judgment is affirmed.

Curtis, J., Shenk, J., Langdon, J., and Waste, C. J., concurred.